BELL, (CUNNINGHAM v.) See Case No. 3,-479.

## Case No. 1,247.

### BELL v. DANIELS et al.

[1 Bond, 212; 1 Fish. Pat. Cas. 372; Merw. Pat. Inv. 616.] [1]

Circuit Court, S. D. Ohio. Nov., 1858.

PATENTS FOR INVENTIONS — CONSTRUCTION—UTILITY—SUGGESTIONS — ABANDONMENT—EFFECT OF CAVEAT — INFRINGEMENT OF COMBINATION — MEASURE OF DAMAGES.

1. A patentee is not controlled by the title of his patent, but the patent, the specification, and the drawings are all to be examined, and are all to have a fair and liberal construction in determining the nature and extent of the invention.

[Cited in Geier v. Goetinger, Case No. 5,299. See, also, Parker v. Stiles. Id. 10.749; Ex parte Littlefield, Id. 8,398; Ex parte Mackay, Id. 8.838; Ex parte Gay, Id. 5,-279; Page v. Ferry, Id. 10,662.]

2. A patent can not be valid for a principle merely, but must be for the application of the principle to some practical and useful purpose.

[See O'Reilly v. Morse, 15 How. (56 U. S.) 62; Mitchell v. Tilghman, 19 Wall. (86 U. S.) 287; McComb v. Brodie, Case No. 8,-708; Andrews v. Carman, Id. 371; In re Smith, 16 Fed. 465.]

3. The patent raises the presumption of utility, and the jury are not to conclude that there is no utility in an improvement because of its apparent simplicity, nor from the fact that it may not be the best mode of effecting the result. This last consideration would affect the value of the patent, but not its validity.

[Cited in Gibbs v. Hoefner, 19 Fed. 324. See, also, Lee v. Blandy, Case No. 8,182; Tilghman v. Werk, Id. 14,046.]

4. Others may have made suggestions to the patentee as to the possibility of making the improvement subsequently patented; they may have thought upon the subject and made experiments with reference to it, but unless their experiments resulted in discovery, such approaches to invention would be no bar to the granting of a patent to one who succeeded in making the discovery and perfecting it.

[See Pennock v. Dialogue, Case No. 10,941; Judson v. Moore, Id. 7,569; Roberts v. Dickey, Id. 11,899; Whittlesey v. Ames, 13 Fed. 893.]

5. An abandonment or dedication to the public of an invention may be made as well after patent granted as before; but when the patent has actually been granted, it would undoubtedly require a strong case to prove abandonment.

[See Hovey v. Henry, Case No. 6,742.]

6. The effect of a caveat is to protect the claim of an inventor from all interfering applications made within one year after its filing, by requiring the office to notify him of such applications, that he may resist the interference if he chooses. But if, during the time which elapses between the filing of his caveat and his application, he allows his invention to go into public use, his caveat will not protect him.

[See American Hide & Leather Splitting & Dressing Mach. Co. v. American Tool & Mach. Co., Case No. 302.]

7. B. made application for a patent in January, 1838. Some objections were made by the office, and, finally, an amended specification was filed in March, 1840, upon which the patent issued. There was no evidence that the patentee

[1] [Reported by Samuel S. Fisher, Esq.; reprinted by Lewis H. Bond, Esq.; and here republished by permission. Merw. Pat. Inv. 616, contains only a partial report.]

withdrew or abandoned his application of 1838: *Held*, that the two years during which the invention might be used before the application without working abandonment, must be dated back from January, 1838.

[Cited in Blandy v. Griffith, Case No. 1,529; Goodyear Dental Vulcanite Co. v. Willis, Id. 5,603; Smith v. Goodyear Dental Vulcanite Co., 93 U. S. 501; Colgate v. W. U. Tel. Co., Case No. 2,995. See, also, Henry v. Francestown Soap-Stone Stove Co., Id. 6,382.]

8. There is no infringement of a patent for a combination, unless all the essential parts of the combination are substantially imitated.

[Cited in Crompton v. Belknap Mills, Case No. 3,406. See, also, Brooks v. Jenkins, Id. 1,953; Brooks v. Bicknell, Id. 1,945; Fisher v. Craig, Id. 4,817; Gage v. Herring, 107 U. S. 640, 2 Sup. Ct. 819.]

9. There is no unbending or unyielding rule of damages, but the rule generally recognized as the true one is to give, as damages, the amount of profits saved to the defendants by the unlawful use of the plaintiff's invention.

[Cited in Magic Ruffle Co. v. Elm City Co., Case No. 8,950. See, also, Wayne v. Holmes, Id. 17,303.]

At law. This was an action on the case, [by Martin Bell against Hiram G. Daniels and Cyrus Newkirk,] tried by the court and a jury, to recover damages for the alleged infringement of letters patent [No. 1,630] for an "improvement in the mode of applying the waste heat of blast furnaces to steam boilers," granted to plaintiff, June 10, 1840. In the apparatus described in the specification the boilers stood on the stack by the side of the tunnel head, with which they were connected by a short flue. The heat and gas passed by this flue to the end of the boiler nearest the tunnel-head, thence to the end of the boiler, thence back under the other boiler (the boilers being separated by a brick partition wall dividing the fire-bed longitudinally), and so out through a chimney. The claim of the patentee was as follows: "The arrangement of flues and their necessary appendages by which the flame and gas escaping from the tunnel-head are applied to the boilers for the creation of steam."

In the defendants' apparatus, the two boilers, having one common flue or fire-bed without partition, were placed directly over the tunnel-head, the gas striking them at one end, passing under both together to the opposite end, and thence out through a chimney. This apparatus was used for four hundred and thirty-nine working days before the expiration of plaintiff's patent.

In relation to the history of the invention, it appeared in evidence that the boilers had been put up in various places during the years 1836 and 1837. That the plaintiff commenced experimenting as early as 1834, and continued to experiment until January, 1837, when he filed a caveat. In January, 1838, he filed his specifications, and made his application for a patent, but, having claimed the "application of the waste heat to boilers in any manner," instead of the mode which he had invented and described, his patent was

rejected. He filed another specification (without withdrawing the first application), in which the same machine was described, but with a different claim. This was filed in March, 1840, and on June 10, 1840, the patent issued.

G. M. Lee and S. S. Fisher, for plaintiff.

C. Fox and H. H. Hunter, for defendants.

LEAVITT, District Judge. The claim in this case is for the infringement of a patent right. The defendants have plead the general issue, and filed a notice setting up the various defenses upon which they rely. The first of these denies the validity of the patent on its face, and is a question for the consideration of the court. The patent is for "a new and useful improvement in the mode of applying the waste heat of blast furnaces to steam boilers." The plaintiff is not controlled by his title, but the patent, specification, and drawings are all to be examined, and are all to have a fair and liberal construction, in determining the nature and extent of the invention. The statute requires that the patentee shall describe his invention in such clear, full, and exact terms as shall enable any person skilled in the art to which it relates to construct or apply the invention. The defendants insist that these specifications are defective for uncertainty and ambiguity, because they do not state what are the "necessary appendages" to the flues, and, because the claim is for the application of heat to boilers to produce steam, or merely a claim for a principle. The plaintiff, in his specification, describes his improvement as "consisting in the manner of applying the waste heat of furnaces to the generation of steam in steam boilers," and alleges that the object of his specification is to afford practical directions for the use of his improvement.

In his summing up, or conclusion, to which we must look, in order to determine precisely what the patentee claims as his invention, we find that his claim is for "the arrangement of flues and their necessary appendages, by which the flame and gas escaping from the tunnel-head are applied to the boilers for the creation of steam." The court has had occasion to construe this specification and claim in a former trial. In the case referred to, a motion for a new trial was fully argued, Judge McLean being present. Both judges held that the words, "arrangement of flues and their necessary appendages," as used by the patentee, were equivalent to a combination of mechanical structures producing the result stated. It is true that a patent cannot be valid for a principle merely, but must be for the application of a principle to some practical and useful purposes; but in this case, it is not claimed as a discovery that heated air applied to a boiler will make steam, but that the mode of applying the heated air of a furnace in a way to save fuel and labor has been dis-

covered, the invention patented consisting in the contrivances by which the hot air is applied. These contrivances, as described in the specification, are called flues and their appendages, and consist of: 1. The mode by which the heated air passes from the top of the stack into the flues. 2. The mode of bringing the heated air in contact with the boilers, which is by means of a flue passing under one boiler and then under the other, and escaping through an outlet at the end of the boilers at which it entered; and 3. The position or arrangement of the boilers. Neither the boilers, the flues, nor any of the appendages are new, but the claim is that the combination of the whole is new and useful. And there would seem to be no doubt that this is a patentable combination, including the application of principles, not separately claimed to be new, to the production of a new and useful result.

Upon the question of utility, it may be remarked as a familiar principle that the patent raises the presumption of utility, yet the defendants may show, in order to defeat the patent, that the invention is worthless, though, if it appears that it is in any degree useful, the patent will be sustained. The plaintiff has offered proof by Dr. Fisher and Mr. Foster of the utility of this mode of heating boilers, and it will be for the jury to say, from this and all the testimony, whether his invention is, in fact, of any value. In doing this, they are not to conclude that there is no utility in the improvement from its apparent simplicity, nor from the fact that it may not be the best mode of effecting the result. This last consideration would affect the value of the patent, but not its validity. As to the novelty and originality of the improvement patented, the court will again remark that the patent itself raises a presumption in favor of both. The statute, however, requires that the invention shall be new, and if the defendants can show that it was known or in use prior to the patentee's application for a patent, the plaintiff can not recover. This defense is set up in the present case. It is not claimed, indeed, that the combination as such is not new; that is, that it was ever before applied to produce the result claimed for it; but it is insisted by the defendants, that the invention is not new and original, because heated air has been before applied to other purposes. The test of novelty, as applied to a combination, seems to be, whether the application of heated air, by such means and appliances as the plaintiff claims to have invented, has been before known as an agent for raising steam in boilers, for, as already stated, this is a principle of the plaintiff's invention, and the fact that heated air had been before used in a different way and for a different purpose, would not be within this principle and would not defeat the patent for want of novelty. In this connection, I remark that it is no evidence of such a prior knowledge

of the invention as will defeat the patent, that other persons have made suggestions to the patentee as to the possibility of making the improvement subsequently patented. Others may have thought upon the subject, and made experiments with reference to it; but unless they accomplished the object, unless their experiments resulted in discovery, such approaches to it would be no bar to the granting of a patent to one who was successful in making the discovery and perfecting it.

But it is claimed that if the plaintiff was the inventor of a patentable subject, there is evidence of a prior public use of his invention which invalidates his patent, and that such prior use was under the authority, and by the concurrence of the plaintiff. The statute provides that if the patented structure or improvement has been in public use, or on sale, for two years prior to the application for a patent, with the consent and allowance of the patentee, the patent shall be void, and whether there was or was not such prior use, will be a question of fact for the jury. In the present case, the witness, Spear, says that in 1837, he put up boilers for his father-in-law, on the plan of Bell's patent, in Huntington county, Pennsylvania, with the knowledge of Bell, and with his consent. E. Soden states that, in 1836 or 1837, his brother, by the consent of plaintiff, put up boilers in Tennessee. James Bell states that the boilers put up by Spear were put up under the supervision of the patentee, and for the purpose of further experiments. It will not be necessary to decide whether this was a public use of the invention, within the meaning of the statute, if the jury are satisfied that such use was not more than two years before the date of Bell's application for a patent. It appears that in January, 1837, the plaintiff filed a caveat in the patent office; and on January 26, 1838, he filed his application. Upon this application. the patent office refused to issue a patent. It was amended in March, 1840, and on June 10, 1840, the patent issued.

The effect of the caveat is to protect the claim of an inventor from all interfering applications made within one year after its filing, by requiring the office to notify him of such applications, that he may resist the interference if he chooses. But if, during the time which elapses between the filing of his caveat, and his application, he allows his invention to go into public use, his caveat will not protect him. The only question upon this point, therefore, for the jury, will be whether the boilers put up by Spear and Soden were put up less than two years before the date of Bell's application. If so, they are within the exception of the statute, and the defense that the invention had been in public use two years prior to the application fails. It is. however, insisted by the defense that the application made by the plaintiff, in January, 1838, can not protect him from the legal effect of allowing his improvement to go into

public use, for the reason that the patent office rejected that application; that, therefore, it must be regarded as a nullity, and that the application for the patent must be dated from March, 1840, and not from January, 1838. This question is decided by section 7 of the act of 1836. That section provides that when a patent is refused, the application shall still be in force, unless the applicant, in a manner pointed out, elects to withdraw it. In this case, Bell made no such election; but he filed an amended specification in 1840, under which the patent issued. This amendment of the original specification, having been provided for by the section above referred to, the court has no difficulty in holding that the application of the plaintiff must date from January, 1838.

The question of abandonment has been raised in this case, and it will be the duty of the jury to pass upon it. If an inventor, by his actions and consent, shows that he has made a dedication of his invention to the public, he can not afterward disavow such a dedication, and obtain a patent; and, therefore, if the jury are satisfied, from the evidence, that this patentee has permitted his invention to go into public use, without objection, and without taking any steps to vindicate his rights, he will be viewed as having given his improvement to the public, and will not be permitted afterward to resume it. This abandonment, or dedication to the public, may be made as well after patent granted as before; but, where the patent has actually been granted, it would undoubtedly require a strong case to prove abandonment.

The doctrine of the law upon this and the preceding points may be briefly stated thus: that if the jury find that the invention was used by others, or even by one person, with the consent or allowance of the inventor, publicly, and for more than two years before the application for a patent; or if they find that it was publicly used for a long period by the inventor himself, not in the way of experiment, but for gain, in either case the patent is void.

If the jury shall be satisfied that this is a patentable invention, that it is new and useful, and has not been abandoned, or permitted to go into public use for more than two years before the application, they will then inquire whether the defendants have infringed the plaintiff's patent. This is a question of fact for the jury. It must be proved by the plaintiff, for the burden of proof is upon him, and to sustain his case he must prove that the defendants have either used his invention, or something substantially like it. To this end, he has introduced two witnesses—Dr. Fisher and Mr. Foster—both of whom testify that the two structures are substantially the same. The jury will, however, be guided by all the evidence in the case, as well the examination of the models and drawings, and of the patent itself, as by the testimony of the experts whose opinions have been laid before them. The court has already stated that it regards the claim of the plaintiff, as set forth in his specification, as being, substantially, a claim for a combination of known mechanical structures to produce a new and useful result. The defendants contend that they have not used all of the parts of this combination, and therefore insist that they are not liable for an infringement. It is undoubtedly true that the use of one or more parts of a combination is not an infringement, and if the defendants have not used all the flues or appendages claimed by the patentee they have not infringed. If the specification requires a flue for conducting the heat from the tunnel-head to the boilers, and the jury find that the defendants have not used such a lateral flue, or anything equivalent to it, then there is no infringement, for the patentee can not abandon any part of his improvement which he claims in his specification as material.

If he has claimed the lateral flues as a material part of his invention, he is not now at liberty to say that it is no part of his patent. In this specification, the plaintiff describes also the flues under the boilers, formed by a division wall; the defendants use no such division wall, but the heat passes under both boilers at the same time. The defendants, therefore, insist that they do not use the plaintiff's arrangement of flues, and that there are in fact no flues in their structure. It will be for the jury to say whether this constitutes a substantial difference in the two machines; if so, the defendants have not infringed. As has been before remarked, they must use substantially all the parts of the plaintiff's combination, in order to be guilty of an infringement of his patent. If they do this; if they include in their contrivance, substantially, all the principles of the plaintiff's combination, it will be no defense that the structure used by them is better in its effects than that patented by the plaintiff. If the jury believe that none of the foregoing defenses are sustained, and that the defendants have infringed, they will then inquire what damages the plaintiff shall receive. This is wholly within the discretion of the jury, though no claim is made in the present case for any thing beyond compensatory damages. There is no unbending or unyielding rule of damages, though that usually recognized as the true rule has been to give to the plaintiff, as damages, the amount of profits which the defendants have derived from the use of the plaintiff's improvement, not the amount which they might have realized, or which they made from the use of improvements other than those of the patentee, but what they actually did make by the use of the machine as patented. In this case, it is claimed by the plaintiff that the jury have the data for ascertaining the defendant's profits, in the value of the coal saved by

the use of the plaintiff's invention. This would seem to be a satisfactory basis. The furnace was run four hundred and thirty-nine days. The witnesses differ greatly as to the quantity of coal that would be required to make the necessary steam by the old method, but it will be for the jury to say what the quantity should be. As before remarked, the whole subject of damages is with them, and they will give such an amount as in their judgment seems proper, under the evidence. There are no doubt cases in which the license price may be a criterion, but there are few instances in my. judgment, in which, where his invention is pirated, the patentee ought to be concluded by a former offer to sell.

[NOTE. For other cases involving this patent, see Bell v. McCullough, Case No. 1,256; Bell v. Phillips, Id. 1,262.]